DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Tina M. Alarcon | ) CASE NO. 5:07 CV 0230 |
| Plaintiff, | ) MEMORANDUM OPINION |
| v. | ) |
| Transunion Marketing Solutions, Inc., et al., | ) |
| Defendants. | ) |

Plaintiff Tina Alarcon (plaintiff or Alarcon) alleges that her reputation was harmed and she suffered financial loss due to the actions of defendant Collection Consultants of California (defendant or CCC).[1] Plaintiff claims that CCC violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692, *et seq,* and was negligent in its response to the disputed entries on her credit report.[2]

CCC has moved for summary judgment on the grounds that: 1) Alarcon's claims under the FDCPA are either barred by the statute of limitations or are without merit, and 2) her state

---

[1] Defendants Transunion Marketing Solutions, Inc., Experian Information Solutions Inc., Equifax Credit Information Services, Inc., Financial Debt Recovery, Inc., Collection Consultants Associates, Inc., JMD, LLC, *dba* High Desert Creditors Service, Kasparek Enterprises, Inc., *dba* Professional Medical Recovery, and Providence Health System-Southern California have been dismissed.

[2] In its motion for summary judgment CCC challenges whether plaintiff's claim for negligence is actually a claim for violation of the Fair Credit Reporting Act, 15 U.S.C. 1681s-2(b).

law claim for negligence is preempted by the Fair Credit Reporting Act (FCRA)[3] which does not allow for private causes of action.  Even if the FCRA claim were allowed, CCC contends, it still fails as Alarcon has presented no evidence that CCC failed to meet its obligation under the statute or that it was negligent (Document 85).[4]

Plaintiff has opposed defendant's motion for summary judgment (Documents 98 and 109) and defendant has replied (Documents 100 and 110).

For the reasons discussed herein, defendants's motion for summary judgment is granted in part and denied in part.

## I. FACTS

Alarcon received a copy of her Credit Report in March 1997 and noticed another woman's name, address and unpaid bills on it.[5]  The other woman lived in California and was named Tina Marks.[6]  Marks' birthday and first name were the same as Alarcon's.[7]  Alarcon lives in Ohio and has never lived in or had hospital treatment in California.[8]

---

[3]15 U.S.C. 1681s-2(b).

[4]In her brief in opposition to CCC's motion for summary judgment, Alarcon concedes her claim against CCC for negligence is actually a claim under the Fair Credit Reporting Act for breach of duty to reinvestigate under 15 U.S.C. 1681s-2(b).  The Court does not reach CCC's argument that it was procedurally improper for Alarcon to plead this for the first time in her opposition brief as it has disposed of this claim on the merits.

[5]Amended Complaint, par. 13.

[6]Amended Complaint, par. 4.

[7]Amended Complaint, par. 5.

[8]Amended Complaint, paragraphs 3 & 9.

On April 21, 1997, Alarcon sent a dispute letter to Transunion, one of the credit reporting companies, explaining that she was not Marks and the bills were not hers.[9] Transunion wrote to Alarcon that it would take Marks' name and accounts off of her report.[10]

Seven years later, on August 2, 2004, an investigator from the California Welfare Fraud department called Alarcon's employer. He was investigating Alarcon for welfare fraud because, based on Marks' use of Alarcon's social security number, he mistakenly believed Alarcon and Marks were the same person.[11] On August 12, 2004, Alarcon filed a report with the Tallmadge, Ohio police that her identity had been stolen.[12]

When Alarcon checked her credit report on August 30, 2004, she found that debt collection company CCC had listed Marks' California hospital bills on her report.[13] On the same day, August 30, 2004, Alarcon called CCC and explained the error to CCC employee Steve Tonari.[14] She faxed them a copy of the dispute form she had just sent to credit reporting

---

[9] Amended Complaint, par. 15. Tina Marks was sued but did not respond to summons.

[10] Amended Complaint, par. 16. The next time Alarcon checked her credit report after this phone call was August 30, 2004 (Amended Complaint, par. 25).

[11] Amended Complaint, paragraphs 17 & 19.

[12] Amended Complaint, par. 22.

[13] Amended Complaint, par. 26.

[14] Amended Complaint, par. 32.

3

company Transunion.[15] Later that day, Mr. Tonari told Alarcon that he would delete all the information CCC had put on her report that, in fact, belonged to Marks.[16]

Thereafter, Alarcon made multiple efforts to have the incorrect information removed from her credit report. CCC responded each time with assurances that it would request removal of Marks' information.[17]

---

[15] Amended Complaint, par. 33.

[16] Amended Complaint, par. 34.

[17] On September 2, 2004, CCC Vice President Matt Logan (Logan) prepared a magnetic tape (a medium to transmit software data) request to the three major credit reporting companies asking them to delete the Marks information from plaintiff's account (Logan Aff., par. 5). CCC did not request an AUD number to verify this deletion request (Lubin Depo., p. 83). On September 23, 2004, CCC general manager Jerry Lubin responded to a "CCDV" inquiry (a challenge to the credit report) by telling "E-OSCAR" (software to emergently delete certain credit reporting information) to delete all information he had entered regarding Tina Marks (Lubin Depo., p. 34). On October 2, 2004, Alarcon checked her credit report and all names, addresses, and accounts of Marks were gone (Amended Complaint, par. 35). On or about October 4, 2004, Logan prepared another magnetic tape instructing the three major credit reporting companies to delete the incorrect accounts from Alarcon's credit report (Logan Aff., par. 6). An AUD number was not requested (Lubin Depo., p. 83). By July 2, 2005, when Alarcon checked again, Marks' bills had reappeared on her credit report (Amended Complaint, par. 36). Alarcon called Mr. Tonari at CCC again on July 5, 2005 (Amended Complaint, par. 41). Mr. Tonari said he would tell all the reporting companies to remove Marks' information from their reports (Amended Complaint, par. 42). On August 2, 2005, CCC asked the credit reporting companies a third time to cancel the incorrect accounts from Alarcon's credit report (Logan Aff., par. 7). On August 18, 2005, her credit report was again correct (Amended Complaint, par. 49). Alarcon checked her report about six weeks later on October 1, 2005, and Marks' bills were back on her report (Amended Complaint, par.50). She called the reporting company and other bill collectors that listed Marks' accounts on her report (Amended Complaint, paragraphs 51-56). On November 15, 2005, Alarcon's report still showed Marks' bills (Amended Complaint, par.68). On January 5, 2006, CCC sent Alarcon a fax informing her that eleven of Marks' St. Joseph Hospital bills were still on her report (Amended Complaint, par. 80). Alarcon called the hospital to try to straighten out the confusion (Amended Complaint, paragraphs 81-84) but when Alarcon checked her credit report on June 26, 2006, and it still showed outstanding collections, she called CCC and employee Donna told her CCC would delete the 12 outstanding Marks accounts from her report (Amended Complaint, paragraphs 108-112).

When Alarcon applied for a mortgage on June 26, 2006, the bank refused, saying it could not obtain her credit report because a security freeze had been placed on the account by an unknown person.[18] Alarcon eventually obtained a mortgage on July 3, 2006, but the interest rate was ½ point higher than it would have been on June 26, 2006.[19]

Alarcon checked her credit report every month from August 30, 2006, until November 20, 2006, and found Marks' social security number listed on it.[20] By January 2, 2007, Alarcon's credit report listed only Marks' debts. Alarcon's own credit history was completely gone.[21] Alarcon called credit reporting company Equifax to tell them she was not Marks and was told that Equifax would correct the problem, but when she checked her report on January 12, 2007, it still showed Marks' accounts and identified Alarcon as "Tina Marks-Alarcon."[22]

Alarcon filed suit on January 26, 2007, alleging that CCC was negligent and violated the FDCPA because it failed to confirm that the incorrect bills were removed from her credit report (Amended Complaint). On February 16, 2007, CCC made a request to the credit reporting companies to delete the incorrect information from Alarcon's report. This time, CCC requested

---

[18]Amended Complaint, paragraphs 114-119.

[19]Amended Complaint, par. 125.

[20]Amended Complaint, paragraphs 133-136.

[21]Amended Complaint, par. 139.

[22]Amended Complaint, paragraphs 140-142.

an "AUD" number.[23] Alarcon has not noticed any incorrect information on her report since that time.[24]

## II. LAW AND ANALYSIS

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. V. Catrett*, 477 U.S. 317, 324 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechell v. Cedar Point, Inc.*,

---

[23]Lubin Depo., p. 83.

[24]Document 98, p. 3.

747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* At 251-52. *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

B. <u>Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.*</u>

In count II of her amended complaint, Alarcon alleges that CCC, through its representatives, violated 15 U.S.C. 1692e by making false and/or misleading statements to her on August 30, 2004, July 5, 2005, November 15, 2005, and January 2, 2007.[25] She contends that

---

[25]Amended Complaint, paragraphs 156, 157 and 161. CCC does not dispute that it is a debt collector as contemplated by the FDCPA (Document 85).

CCC's statements that it would remove Marks' information from her credit report were false or misleading because although the information was occasionally removed, it always returned.[26] Alarcon maintains that such statements violated the statute whether or not CCC knew or intended them to be false and/or misleading (Amended Complaint, par. 157) and that CCC is liable to her for actual damages under 1692j.[27]

In its motion, CCC advances three main reasons that summary judgment is proper: first, because it made three requests to have the information removed;[28] second, because plaintiff has no evidence that CCC lied to her when reporting it would have the accounts deleted;[29] and, third, because 1692e does not obligate CCC to verify deletion requests with a confirmation number (Document 100, pages 5&6).[30]

In 1977, Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors. . . [and] to protect consumers against debt collection abuses."[31] A debt collector may not use any false, deceptive, or misleading representation or

---

[26] Amended Complaint, paragraphs 156 & 162.

[27] Amended Complaint, par. 168.

[28] Document 85, p. 5.

[29] Document 85, p. 5.

[30] CCC also asserts that all but the claim arising from the January 2, 2007, conversation with CCC representatives are time-barred (Document 85, p. 5). Alarcon argues that all claims are preserved due to equitable tolling. For the purposes of summary judgment, the Court will construe the facts in a light most favorable to Alarcon and assume all claims under this section were timely.

[31] 15 U.S.C. 1692e, as cited in *Rice v. Great Seneca Financial Corp.,* 556 F.Supp. 2d 792, 797 (6th Cir. 2001).

means **in connection with the collection of** any debt.[32] The use of any false representation or deceptive means **to collect or attempt to collect** any debt or to obtain information concerning a consumer **is prohibited**.[33] Courts in the Sixth Circuit have likewise applied the statute to protect the consumer against any false and/or misleading statements a debt collector might make to pressure or intimidate a debtor into payment.[34] Consistent with its stated purpose, the statute is applied in these cases to protect the consumer from a debtor who uses false or misleading statements *in connection with collection of a debt.*

In this case, the alleged false or misleading statements were not made in connection with collection of a debt. CCC's statements to Alarcon were made in response to her requests to remove Marks' information and not to collect the debt or pressure her to pay the debt.[35] Outside of the context of debt collection efforts, 1692e is inapplicable and Alarcon's reliance on it in this

---

[32] 15 U.S.C. 1692e (emphasis added).

[33] 15 U.S.C. 1692e(10) (emphasis added).

[34] *See, Rice v. Great Seneca Financial Corp.,* 556 F. Supp. 2d 792, 802-803 (S.D. Ohio 2008) (debtor's action under 1692e was for account statement attached to a complaint to collect a debt; court's language described that FDCPA was enacted to "ferret out collection abuse in the form of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights. . . [and] impersonating public officials and attorneys, and simulating legal process.' "); *Savage v. Hatcher,* 109 Fed. Appx. 759, 760 (6th Cir. 2004) (debtor claimed violation under 1692e for two letters sent to him in collector's "attempts to collect on the debt"); *Broadnax v. Greene Credit Service,* 106 F.3d 400, 1997 WL 14777 *3-*4 (6th Cir. 1997) (debtor alleged violation of 1692e where debt collector accused him of fraudulently negotiating a bad check and instituted a criminal complaint to exert pressure on him to collect on a check; court's language described that under the FDCPA "certain abusive collection practices are actionable" and generally include harassment, abuse, and, under 1692e, false or misleading representations).

[35] Having disposed of the issue on other grounds, the Court does not reach plaintiff's argument that CCC was required to request tracking /verification numbers to confirm that reporting agencies removed Marks' information.

9

situation is misplaced.  For these reasons, plaintiff's claims against CCC under count II fail as a matter of law.

C.      Negligence and Violation of the Fair Credit Reporting Act

In count III of her amended complaint, Alarcon claims CCC owed her a duty of care in its response to her dispute regarding the appearance of Marks' information on her credit report. She claims that CCC failed to exercise reasonable care in these duties, which damaged her financially.[36]

In its motion for summary judgment, CCC contends that plaintiff's common law negligence claim is preempted by the Fair Credit Reporting Act (FCRA) 15 U.S.C. 1681 *et seq.*[37] Alarcon conceded that her negligence claim should be pursued under the FCRA,[38] but CCC then argued that Alarcon could not now assert a "new" claim under the FCRA for the first time in her opposition brief (Document 100, p. 8).[39]  CCC also contends that Alarcon cannot advance a private cause of action against CCC as a furnisher of information (Data Furnisher) under 1681s-

---

[36] Amended Complaint, paragraphs 170-173.

[37] Document 85, pp. 5 & 6.

[38] Document 98, p. 5.

[39] Defendant's argument is not well-taken.  CCC's reliance on *Stemler v. City of Florence,* 126 F.3d 856, 872 (6th Cir. 1997) to support its position is misplaced.  In that case, a criminal action stemming from a motor vehicle fatality, plaintiff sought to pursue an evidence-tampering theory that was never alleged in the complaint, against a defendant who had been dismissed from the action.
    In this case, CCC has been a party to the action throughout and had notice of Alarcon's claims against it regarding Marks' information on her credit report.  To argue that it did not have notice of these claims, whether characterized as a negligence or FCRA claim, is without merit.

2(b) of the FCRA.[40]  Alarcon maintains she can pursue a private cause of action against a Data Furnisher because the Sixth Circuit has allowed such actions.[41]  Finally, CCC argues that even if Alarcon is permitted to pursue a common law action for negligence or a private cause of action under the FCRA, it prevails on summary judgment because it fulfilled its duty of care under a negligence theory and met its obligations under section 1681s-2(b).[42]

### 1. Private Rights of Action Under 15 U.S.C. 1681s-2(b)

The majority consensus among the courts that have addressed the issue is that 15 U.S.C. 1681s-2(b) creates a private right of action by a consumer against a Data Furnisher.[43]  While a consumer cannot bring a private cause of action for a Data Furnisher's violation of its duty to report truthful information,[44] a consumer may recover damages if a Data Furnisher violates its obligations, once notified of a dispute, under 15 U.S.C. 1681s-2(b)(1)(A)-(D).  *Bach v. First Union Nat. Bank,* 149 Fed. Appx. 354, 358-359 (6th Cir. 2005).[45]  Thus, the Court must consider Alarcon's claims against CCC regarding its duties under 1681s-2(b)(1) once CCC was notified of a consumer dispute.

### 2. The Statute of Limitations Under the FCRA

---

[40] Document 85, p. 6.  CCC does not dispute that it is a Data Furnisher under the FCRA.

[41] Document 109, pp. 3 & 4.

[42] Document 85, pp. 6 & 7.

[43] *Sweitzer v. American Express Centurion Bank,* 554 F. Supp.2d 788, 794 (S.D. Ohio 2008).  *See also, Stafford. v. Cross Country Bank,* 262 F. Supp.2d 776, 783-784, 783 n. 4 (W.D.Ky 2003) as cited in *Sweitzer, supra,* at 794.  CCC does not dispute it is a data furnisher under this statute (Document 85, p. 6).

[44] Under 15 U.S.C. 1681s-2(a)(1)(A).

[45] *Citing Stafford v. Cross Country Bank, supra,* at 782-783.

11

Defendant did not raise the issue of the statute of limitations under the FCRA in its motion for summary judgment. The FCRA is governed by a two year statute of limitations.[46] An action for violation of 1681s-2(b) must be brought within two years from the date on which liability arises.[47] Generally, liability arises 30 days after the Data Furnisher does not comply with its obligations under 1681s-2(b)(1)(A)-(D).[48] A Data Furnisher's obligations arise under 1681s-2(b)(1)(A)-(D) after a consumer reporting agency notifies it of a dispute.[49]

In this case, only claims arising on or after January 26, 2005, fall within the statute of limitations. There is evidence before the Court of 1681i dispute on September 23, 2004.[50] This claim falls outside of the statute of limitations and is time-barred. However, there is evidence before the Court of a 1681i dispute on July 6, 2005.[51] Plaintiff's cause of action stemming from this dispute notification is timely.[52]

---

[46] *Sweitzer* at 794-795, *citing TRW Inc. v. Andrews,* 534 U.S. 19, 22, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001); *Hahn v. Star Bank,* 190 F.ed 708, 713-714 (6th Cir. 1999).

[47] *Sweitzer* at 795. In a case where defendant has materially and willfully misrepresented information material to plaintiff's claim, the action can be brought within two years of the *discovery* of the material and willful misrepresentation. The Court does not find such misrepresentation here.

[48] *Sweitzer* at 795, *see* 15 U.S.C. 1681s-2(b)(2), 1681i(a)(1)-(2); *Briley v. Burns Int. SAFETOHIRE.COM, Inc,* 78 Fed.Appx. 481, 484 (6th Cir. 2003).

[49] After receiving notice pursuant to section 1681i(a)(2)[Prompt notice of dipute to furnisher of information] the Data Furnisher must carry out it's duties pursuant to 1681s-2(b)(1)(A)-(D).

[50] Lubin Aff., par. 8.

[51] Lubin Aff., par. 9.

[52] Specifically, CCC general manager Jerry Lubin stated that CCC received notice of a consumer dispute (CCDV inquiry) from one of the credit bureaus on September 23, 2004 ( Lubin

(continued...)

### 3. 15 U.S.C. 1681s-2(b) Duties of Data Furnishers Upon Notice of Dispute

After receiving notice of a dispute under 1681i, above, the Data Furnisher is required to conduct an investigation with respect to the disputed information. 15 U.S.C. 1681s-2(b)(1)(A)-(D), *Sweitzer, supra.* Courts have construed that these duties require conducting a reasonable investigation.[53] Summary judgment is proper if the reasonableness of the defendant's procedures is beyond question.[54]

Alarcon contends that CCC's failure to obtain a tracking number or run her credit profile to confirm that the credit reporting agencies removed Marks' information amounted to an unreasonable investigation under 1681s-2(b).[55] CCC responds that the statute imposes no such requirement and its follow-up after notification of the dispute was reasonable.[56]

---

[52](...continued)
Aff., par. 8, Lubin Depo., pages 34 & 93). Claims stemming from this dispute notification are time-barred. According to Lubin, there was an "inquiry" from a credit bureau on July 2, 2005 (Lubin Depo., p. 94) and an inquiry on July 6, 2005 (Lubin Aff., par. 9) (see also Exhibit "A" to Lubin Aff., p. 5). Claims stemming from either of these dispute notifications are within the statute of limitations.

[53]*Akalwadi v. Risk Management Alternatives, Inc.* 336 F. Supp.2d 492, 510 (D. Md. 2004) *see also, Garrett v. Trans Union, L.L.C.* 2006 WL 2850499, *8 and *9(S.D.Ohio, 2006)(dicta that investigation under 1681s-2(b) must be reasonable); *Defer v. World Fin. Network Nat'l Bank*, 2007 U.S. Dist. LEXIS 76188 ( E.D. Mich. Oct. 15, 2007) and *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005).

[54]*Crabill v. TransUnion, L.L.C.,* 259 F.3d 662, 664 (7th Cir. 2001) as cited in *Westra v. Credit Control of Pinellas, supra,* at 827.

[55]Document 109, p. 5.

[56]Document 100, pages 8 & 9.

In this case, there is a genuine issue of material fact as to whether CCC conducted a reasonable investigation. Accordingly, this issue cannot be decided as a matter of law, and summary judgement is inappropriate.

Since Alarcon has presented genuine issues for a trier of fact under count III of her amended complaint, CCC's motion for summary judgment for claims under 15 U.S.C. 1681s-2(b) must be denied.

### III. CONCLUSION

For these reasons, CCC's motion for summary judgment on count II of plaintiff's amended complaint is *GRANTED*. CCC's motion for summary judgment on count III of plaintiff's amended complaint is *DENIED* as to claims under the FCRA arising on or after January 26, 2005.

IT IS SO ORDERED.

| | |
|---|---|
| September 30, 2008 | *S/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |